IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK ROBERT CHESTER, ET AL.          :          CIVIL ACTION
                                      :
              v.                      :
                                      :
JEFFREY A. BEARD, ET AL.              :          NO. 07-4742

## MEMORANDUM AND ORDER

Padova, J.                                                      **May 29, 2008**

This is a class action suit brought by Frank Robert Chester, Zachary Wilson and Donald Hardcastle on behalf of a class of individuals who have been sentenced to death in Pennsylvania. Plaintiffs contend that Pennsylvania's lethal injection policies and procedures pose an unnecessary risk that Plaintiffs will suffer pain when they are executed, in violation of the proscription against cruel and unusual punishment and the guarantees of due process of law under the Eighth and Fourteenth Amendments. Plaintiffs seek an order enjoining Defendants from conducting executions according to the Commonwealth's present lethal injection policies and procedures and enjoining the execution of Plaintiffs until Pennsylvania adopts lethal injection policies and procedures that satisfy all Constitutional requirements. Defendants have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) and to transfer this action to the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1406(a). For the reasons that follow, Defendants' Motion to Transfer is granted and Defendants' Motion to Dismiss is granted in part, denied in part, and held in abeyance in part.

I.       FACTUAL BACKGROUND

Plaintiff's challenge the constitutionality of Pennsylvania's lethal injection policies and procedures. The Complaint alleges that each of the Plaintiffs has been sentenced to death in

Pennsylvania.  (Compl. ¶ 2.)  There are more than 200 individuals on "death row" in Pennsylvania.

(Id. ¶ 15.)  Pennsylvania law describes the Commonwealth's lethal injection procedure as follows:

> (a) INJECTION.-- The death penalty shall be inflicted by injecting the convict with a continuous intravenous administration of a lethal quantity of an ultrashort-acting barbiturate in combination with chemical paralytic agents approved by the department until death is pronounced by the coroner. The coroner shall issue the death certificate. The execution shall be supervised by the superintendent or his designee of the correctional institution designated by the department for the execution.

61 Pa. Stat. Ann. § 3004(a).

According to the Complaint, the Pennsylvania Department of Corrections ("DOC") has a confidential manual detailing its specific lethal injection procedures.  (Compl. ¶ 21.)  Although the manual has been kept confidential, those procedures were described by the Deputy Chief Counsel for the DOC in a November 24, 2004 letter (the "Letter").  (Id. ¶ 22 and Ex. A.)  Pennsylvania utilizes three drugs for lethal injections:  sodium thiopental, pancuronium bromide, and potassium chloride.  (Id.)  Sodium thiopental, the first drug administered, is an "ultra-short acting barbiturate" as specified in the statute.  (Id. ¶ 23.)  This drug is administered to anesthetize individuals being executed.  (Id.)  Two syringes of sodium thiopental are injected into the vein of the person being executed prior to the injection of pancuronium bromide.  (Id.)  If the sodium thiopental is not effective, the person being executed will be exposed to excruciating pain during the remainder of the execution process.  (Id. ¶ 24.)  Plaintiffs challenge Pennsylvania's lethal injection procedures with respect to the use of sodium thiopental, because neither the Letter nor § 3004(a) explain how Defendants determine the quantity of sodium thiopental that will ensure that the individual being

executed receives anesthesia for the duration of the execution.  (Id.)

The Complaint further alleges that the lethal injection process uses two angiocath catheters, in separate veins, for injection of the three drugs.  (Id. ¶ 26.)  Plaintiffs challenge the training given to the paramedics, nurses or other health care professionals who make up the lethal injection teams and allege that not all paramedics, nurses and other health care professionals possess the expertise to properly insert intravenous catheters, set up and monitor intravenous equipment, inject intravenous medications properly and accurately assess anesthetic depth to ensure that an inmate is fully anesthetized prior to execution.  (Id. ¶¶ 25, 26.)  The Complaint also alleges that, if the intravenous equipment is not properly utilized, sodium thiopental may flow back into the bag, substantially reducing the actual dosage of the anesthetic received.  (Id. ¶ 27.)   The Complaint further states that neither the Letter nor any other known DOC policy or procedure provides for the proper and necessary administration of sodium thiopental at a level of sedation at which Plaintiffs will avoid serious pain.  (Id. ¶ 28.)  Consequently, there is a risk that Plaintiffs will be conscious during their executions and suffer unnecessary pain.  (Id.)

The Complaint further alleges that, after the injection of sodium thiopental, the lethal injection protocol calls for the injection of pancuronium bromide, a "chemical paralytic" which paralyzes the inmate being executed.  (Id. ¶ 29.)  Pancuronium bromide is a neuromuscular blocking agent that causes paralysis of the respiratory system.  (Id. ¶ 30.)  This drug does not produce unconsciousness, but can cause asphyxiation.  (Id.)   When sodium thiopental is exposed to pancuronium bromide, it may precipitate and lose its anesthetizing qualities.  (Id. ¶ 31.)  This precipitation is likely to occur without a properly trained lethal injection team, causing Plaintiffs to experience the agony of asphyxiation without any means to indicate that they are suffering.  (Id.)

3

In addition, if the sodium thiopental has not been properly flushed from the intravenous line prior to the injection of pancuronium bromide, the mixture of the two chemicals may create solid particles that block the flow of the catheter and impair the intravenous delivery system.  (Id. ¶ 32.)  If that happens, Pennsylvania's lethal injection procedures provide that the second catheter would be used; Pennsylvania has no back-up procedure in the event that both intravenous lines are impaired.  (Id.)

The third step of the lethal injection procedure is the injection of potassium chloride.  (Id. ¶ 33.)  The Complaint alleges that this drug causes excruciating pain if the inmate has not received proper anesthesia because it burns intensely on its passage through the veins towards the heart, where it causes cardiac arrest. (Id.)  Consequently, if the sodium thiopental is improperly administered, insufficiently strong, or has worn off prior to administration of the potassium chloride, the inmate will experience tremendous burning in the veins and a painful heart attack, but will be unable to express this pain because of the pancuronium bromide.  (Id.)

The Complaint further alleges that Pennsylvania's lethal injection protocol violates the Eighth and Fourteenth Amendments because Defendants have not ensured that the lethal injection of Plaintiffs will be administered by properly trained, screened, and licensed medical professionals.  (Id. ¶ 34.)  The Complaint states that Defendants have failed to promulgate practices to respond to numerous well-publicized problems and complications associated with lethal injection and have failed to do the following:  provide a proper basis for determining the amount and timing of the drugs administered to the inmate; provide a contingency plan, other than the use of a second intravenous line, if a proper vein cannot be located in one or both of a Plaintiff's arms; develop a process to ensure that sodium thiopental is properly flowing and that Plaintiffs will be fully anesthetized throughout the execution procedure; and plan for stopping an execution or resuscitating

4

a Plaintiff in the event a stay of execution is granted.  (Id. ¶ 35.)  The Complaint states that, as a

result, there is an unnecessary risk that Plaintiffs will suffer painful and unconstitutional executions.

(Id. ¶ 36.)

II.    SUBJECT MATTER JURISDICTION

Defendants have moved to dismiss this action for lack of subject matter jurisdiction pursuant

to Federal Rule of Civil Procedure 12(b)(1), for lack of venue pursuant to Federal Rule of Civil

Procedure 12(b)(3) and for failure to state a claim upon which relief may be granted pursuant to

Federal Rule of Civil Procedure 12(b)(6).  "When a motion under Rule 12 is based on more than one

ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the

complaint for lack of subject matter jurisdiction, all other defenses and objections become moot."

Tolan v. United States, 176 F.R.D. 507, 509 (E.D. Pa. 1998) (citing In Re Corestates Trust Fee

Litigation, 837 F. Supp. 104, 105 (E.D. Pa. 1993), aff'd 39 F.3d 61 (3rd Cir. 1994) and Freiburger

v. Emery Air Charter, Inc., 795 F. Supp. 253 (N.D. Ill. 1992)); see also 5B Charles Alan Wright and

Arthur R. Miller, Federal Practice and Procedure § 1350, at 138-39 (3d ed. 2004).

"A Rule 12(b)(1) Motion may be treated as either a facial or factual challenge to the court's

subject matter jurisdiction."  Gould Elec., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)

(citation omitted).  "In reviewing a facial attack, the court must only consider the allegations of the

complaint and documents referenced therein and attached thereto, in the light most favorable to the

plaintiff.  In reviewing a factual attack, the court may consider evidence outside the pleadings."  Id.

(citations and footnote omitted).  The parties have asked us to consider evidence outside the

pleadings with respect to this aspect of Defendant's Motion to Dismiss.  Consequently, we treat this

portion of the Motion to Dismiss as a factual attack on the Court's subject matter jurisdiction.

Defendants have moved to dismiss the Complaint pursuant to Rule 12(b)(1) on the ground that Plaintiffs Wilson and Hardcastle lack standing to assert the claims alleged in the Complaint as neither is presently under a sentence of death.  As they make no such assertion as to Plaintiff Chester, we consider this aspect of their Motion as a Motion to Dismiss Wilson and Hardcastle as Plaintiffs in this action.

The Complaint alleges that Wilson is:

> currently a prisoner in the custody of the Pennsylvania Department of Corrections.  Mr. Wilson was sentenced to death, but he was subsequently granted a new trial in federal habeas corpus proceedings in the United States District Court for the Eastern District of Pennsylvania.  The Commonwealth of Pennsylvania has appealed the decision of the district court to the United States Court of Appeals for the Third Circuit.  If the Commonwealth is successful in its appeal, or if Mr. Wilson proceeds to trial, Mr. Wilson may again be sentenced to death.  He remains confined with prisoners sentenced to death at S.C.I. Graterford.

(Compl. ¶ 8.)  The Complaint alleges that Hardcastle is:

> currently a prisoner in the custody of the Pennsylvania Department of Corrections.  Mr. Hardcastle was sentenced to death, but he was subsequently granted a new trial in federal habeas corpus proceedings in the United States District Court for the Eastern District of Pennsylvania.  This decision is subject to appeal.  If the decision is reversed, or if Mr. Hardcastle proceeds to trial, he may again be sentenced to death.  He remains confined with prisoners sentenced to death at S.C.I. Graterford.

(Id. ¶ 9.)   The parties have asked us to consider, in addition to these allegations, the Commonwealth's appeal of our order in Hardcastle's habeas proceeding, which is presently before the United States Court of Appeals for the Third Circuit, Donald Hardcastle v. Martin Horn, et al., No. 07-9007 (3d Cir.); and our orders granting the Commonwealth's motion to stay the writ in both Hardcastle's and Wilson's habeas proceedings:  Donald Hardcastle v. Martin Horn, et al., Civ. A.

No. 98-3028 (E.D. Pa. Mar. 7, 2008) (order granting motion for stay pending appeal) and <u>Zachary Wilson v. Jeffery Beard, et al.</u>, Civ. A. No. 05-2667 (E.D. Pa. Jan. 29, 2007) (order granting motion for stay pending appeal).

"At an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant, . . . and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision. . . ." <u>Pa. Prison Soc'y v. Cortes</u>, 508 F.3d 156, 161 (3d Cir. Pa. 2007) (quoting <u>Bender v. Williamsport Area Sch. Dist.</u>, 475 U.S. 534, 542 (1986)). Defendants contend that, since we granted the writ of habeas corpus as to both Wilson and Hardcastle, neither is currently under a sentence of death and, therefore, they have no personal stake in this proceeding and lack standing.  However, as noted above, the Commonwealth has appealed our orders granting the writ to both Wilson and Hardcastle and, at the Commonwealth's request, we have stayed those orders.  Consequently, both Wilson and Hardcastle are each presently under a sentence of death and have standing in this action.  Defendant's Motion to Dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is, accordingly, denied.

III.    VENUE

Defendants ask that we dismiss this suit for lack of venue or, in the alternative, transfer this matter to the United States District Court for the Middle District of Pennsylvania.  Venue in a case brought pursuant to this Court's federal question jurisdiction is appropriate only in:  "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a

7

judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b). The Complaint asserts that venue is proper in this district pursuant to 28 U.S.C. § 1391: "because Plaintiffs are currently incarcerated in the State Correctional Institution at Graterford ("S.C.I. Graterford") in Graterford, Pennsylvania, located within this District, and under the control of Defendant David DiGuglielmo, Facility Manager at S.C.I. Graterford." (Compl. ¶ 6.) The Complaint alleges that Defendant DiGuglielmo is "the Superintendent of S.C.I. Graterford, where Plaintiffs are incarcerated and where they initially challenged Pennsylvania's lethal injection procedures. He is sued in his individual capacity as Superintendent of S.C.I. Graterford." (Compl. ¶ 12.)

A.    Legal Standard

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "In considering a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), the court must generally accept as true the allegations in the complaint, although the parties may submit affidavits in support of their positions." Fellner v. Phila. Toboggan Coasters, Inc., 2005 U.S. Dist. LEXIS 23839, *4 (E.D. Pa. Oct. 18, 2005) (citing Heft v. AAI Corp., 355 F. Supp. 2d 757, 762 (M.D. Pa. 2005)). "The court may examine facts outside the complaint to determine proper venue, but must draw all reasonable inferences and resolve all factual conflicts in the plaintiffs favor." Id. (citing Heft, 335 F. Supp. 2d at 762, and Quarles v. Gen. Inv. & Dev. Co., 260 F. Supp. 2d 1, 8 (D.D.C. 2003)). Defendants have the burden "'of demonstrating that venue is improper.'" Id. (quoting Simon v. Ward, 80 F. Supp. 2d 464, 467 (E.D. Pa. 2000)).

B.      Discussion

Plaintiffs argue that venue is proper in this district pursuant to Section 1391(b)(1) because Superintendent DiGuglielmo resides in this district and is also proper in this district pursuant to Section 1391(b)(2), "because a substantial part of the Commonwealth's efforts to execute Messrs. Chester, Hardcastle and Wilson by means of the challenged lethal injection protocol have taken place and continue to take place in the Eastern District of Pennsylvania."[1]  (Pls. Mem. at 15-16.) Defendants contend that Superintendent DiGuglielmo has been named as a defendant in this case only to enable Plaintiffs to file suit in this district.  They maintain that Superintendent DiGuglielmo has played, and will play, no part in the development or implementation of the Commonwealth's lethal injection protocol and, consequently, should be dismissed as a Defendant.  Defendants further assert that, once Superintendent DiGuglielmo has been dismissed as a defendant to this suit, there will be no basis for venue in this district pursuant to Section 1391(b)(1).  Defendants also maintain

---

[1]On April 30, 2008, we asked the parties to address the issue of whether Superintendent DiGuglielmo actually resides in this district for the purposes of Section 1391(b)(1).  We ordered the parties to file supplemental briefs addressing whether, "for the purpose of determining venue pursuant to 28 U.S.C. § 1391(b)(1), a state official's residence is located at the state capital, even where branch offices of the state official's department are maintained in other parts of the state . . . ."  (April 30, 2008 Order, internal quotation omitted.)   Plaintiffs maintain that, while this proposition is correct as to Secretary Beard, it should not apply to Superintendent DiGuglielmo, because he performs his official duties solely at SCI Graterford, in Graterford, Pennsylvania.  We agree.  As Secretary of DOC, Secretary Beard oversees a department with branches statewide, but performs his duties in the state capital.  Superintendent DiGuglielmo, however, performs all of his official duties in one state correctional institution located in this district.  Consequently, we conclude that his residence may properly be determined by the location where his duties are performed and that his residence, for the purposes of this case, is in the Eastern District of Pennsylvania.  See Tirado v. Stepanik, Civ. A. No. 95-1103, 1997 U.S. Dist. LEXIS 8443, at *9 (E.D. Pa. May 27, 1997) ("Defendants in the case sub judice were, at the time plaintiff's claims arose, prison officials whose jurisdiction was limited to one state correctional institution.  Because defendants did not have statewide jurisdiction, the Court concludes that the official residences of defendants shall be determined by an inquiry into where they performed their official duties.").

that no part of the development or implementation of the Commonwealth's lethal injection protocol

takes place in this district and, therefore, venue is inappropriate here pursuant to Section 1391(b)(2).

      1.    <u>Section 1391(b)(1)</u>

Defendants contend that Superintendent DiGuglielmo, the only defendant who is alleged to

be a resident of this district, is not a proper defendant in this suit and, accordingly, venue is not

proper in this district pursuant to Section 1391(b)(1).   Defendants seek the dismissal of

Superintendent DiGuglielmo pursuant to Federal Rule of Civil Procedure 12(b)(6).   When

determining a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the court looks

primarily at the facts alleged in the complaint and its attachments, <u>Jordan v. Fox, Rothschild,</u>

<u>O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994), and views all well pled allegations in the

light most favorable to the plaintiff.   <u>Angelastro v. Prudential-Bache Sec., Inc.</u>, 764 F.2d 939, 944

(3d Cir. 1985). A Rule 12(b)(6) motion will be granted if the plaintiff has not articulated enough

facts "to raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.

Ct. 1955, 1965 (2007).  It is not enough for a plaintiff to allege mere "labels and conclusions, and

a formulaic recitation of the elements of a cause of action will not do." <u>Id.</u>

The Complaint challenges the constitutionality of Pennsylvania's lethal injection policies and

procedures and the implementation of those policies and procedures, including the training of the

medical professionals who will carry out those procedures.   Defendants argue that Superintendent

DiGuglielmo is not a proper defendant in this suit because he has no involvement in those policies

and procedures.[2]   It is clear that, in order to state a claim against a defendant in a Section 1983

---

    [2]Defendants have submitted the Declaration of Jeffrey A. Beard, Ph.D. in support of their argument that Superintendent DiGuglielmo has no part in the development or implementation of Pennsylvania's lethal injection procedures. (Mot. to Dismiss, Ex. A.) However, as Defendants have

action, the complaint must specifically allege the defendant's involvement in the alleged constitutional violation.  See Thomas v. Independence Twp., 463 F.3d 285, 298 (3d Cir. 2006) (citing Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988)); Rode, 845 F.2d at 1207-08 ("A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*.  Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity."  (citations omitted)).

Plaintiffs do not point to any allegations in the Complaint as showing Superintendent DiGuglielmo's personal involvement.  Rather, they contend that Superintendent DiGuglielmo is a proper defendant in this case because "they seek to enjoin him from participating in any way in the administration of lethal injection procedures plaintiffs contend are unconstitutional." (Pls. Mem. at 14; 4/23/08 Tr. at 28.)  They argue that Superintendent DiGuglielmo is a proper, although, they concede, not a necessary, defendant in this action because "he could properly be enjoined as an officer, agent or employee of the Commonwealth and/or Secretary Beard." (Pls. Mem. at 15, 4/23/08 Tr. at 28.) We find that Superintendent DiGuglielmo's alleged position as Plaintiffs' current custodian, Commonwealth employee, and subordinate of Secretary Beard, is insufficient for Plaintiffs to state a claim against him based upon his personal involvement in Pennsylvania's allegedly unconstitutional lethal injection protocol. Plaintiffs make no allegation that Superintendent

moved for the dismissal of Superintendent DiGuglielmo pursuant to Rule 12(b)(6), we cannot consider the Declaration unless we treat this portion of the Motion to Dismiss as a motion for summary judgment pursuant to Rule 56.  See Fed. R. Civ. P. 12(d).  We choose not to do so and, accordingly, have not considered the Beard Declaration in connection with this portion of the Motion to Dismiss.

DiGuglielmo personally participated in the drafting of Pennsylvania's lethal injection policies and procedures, or that he has the authority to change them. Defendants' Motion to Dismiss is, therefore, granted as to Superintendent DiGuglielmo.

Superintendent DiGuglielmo is the only Defendant who is alleged to reside in this district. Consequently, we agree with Defendants that venue is not proper in this district pursuant to Section 1391(b)(1).

　　　　　　　　2.　　　Section 1391(b)(2)

Plaintiffs argue that, if venue is not appropriate in this district pursuant to Section 1391(b)(1), it is appropriate in this district pursuant to Section 1391(b)(2) because important events giving rise to their claim for relief took place in this district.  The language of Section 1391(b)(2) favors Defendants "by requiring that the events or omissions supporting a claim be 'substantial.'" Cottman Transmission Sys. v. Martino, 36 F.3d 291, 294 (3d Cir. Pa. 1994).  Consequently, "[e]vents or omissions that might only have some tangential connection with the dispute in litigation are not enough.  Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." Id.  In order to determine whether the events or omissions giving rise to Plaintiffs' claims are substantial, we look first at the nature of the case.  Id. at 295.  "Once the substantiality of the events or omissions has been established, it is necessary to determine if a substantial part of those events occurred in the forum at issue." Kichler v. Wieland Int'l, Civ. A. No. 3:07-118J, 2007 U.S. Dist. LEXIS 85402, at *12-*13 (W.D. Pa. Nov. 19, 2007) (citing Cottman, 36 F.3d at 294-95); see also Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. N.Y. 2005) (stating that, "when a plaintiff relies on § 1391(b)(2) to defeat a venue challenge, a two-part inquiry is appropriate. First, a court should identify the nature of the

claims and the acts or omissions that the plaintiff alleges give rise to those claims. Second, the court should determine whether a substantial part of those acts or omissions occurred in the district where suit was filed, that is, whether 'significant events or omissions material to [those] claims . . . have occurred in the district in question.'" (quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005))).

Plaintiffs maintain that venue is appropriate in the Eastern District of Pennsylvania because: (1) they were tried, convicted, and sentenced in this district; (2) they are incarcerated in this district; (3) they have sought habeas relief in this district; and, (4) if they are ultimately successful in their petitions for writ of habeas corpus, they may face re-trial in this district. (Pls. Mem. at 19.) Plaintiffs' claims in this case are not, however, based upon any alleged error concerning their convictions or sentences, or their treatment in their place of incarceration. Plaintiffs' claims relate only to Pennsylvania's lethal injection policies and procedures and the implementation of those policies and procedures. We find that the development and implementation of Pennsylvania's lethal injection policies and procedures are the only substantial events giving rise to Plaintiffs' claims in this case. The Declaration of Secretary Beard states that Pennsylvania's "[d]epartmental procedures and policies related to execution by lethal injection are formulated and promulgated solely at DOC headquarters in Camp Hill, Cumberland County, Pennsylvania" and "[t]he only institution at which those procedures are utilized is SCI-Rockview[,]" located in Bellefonte, Centre County, Pennsylvania.[3] (Beard Decl. ¶¶ 3, 6-7.) Camp Hill, Pennsylvania and Bellefonte, Pennsylvania are both located in the Middle District of Pennsylvania.

_____

[3]We may consider the Beard Declaration in connection with Defendants' Motion to Dismiss for improper venue pursuant to Rule 12(b)(3). See Fellner, 2005 U.S. Dist. LEXIS 23839 at *4-*5.

As none of Pennsylvania's policies and procedures related to execution by lethal injection were developed in the Eastern District of Pennsylvania or are carried out in the Eastern District of Pennsylvania, we find that the Eastern District of Pennsylvania is not "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   28 U.S.C. § 1391(b)(2).  In cases such as this one, where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to Section 1391(b)(2) in the district where those policies are developed.  See Stanton-Negley Drug Co. v. Pennsylvania Dep't of Public Welfare, Civ. A. No. 07-1309, 2008 U.S. Dist. LEXIS 33890, at *15 (W.D. Pa. Apr. 24, 2008) (finding that venue for an action challenging the implementation of a statewide program by the Department of Public Welfare was improper in the district where plaintiffs felt the impact of those policies, and proper in the district where those policies were developed, because, "when a complaint is directed at statewide policies and actions of state officials, proper venue is the district in which those policies and actions took place, not the Plaintiff's residence where she felt the effect of those policies" (citing Perkins v. Snyder, Civ. A. No. 94-4785, 1994 U.S. Dist. LEXIS 13709, at * 5-*6 (E.D. Pa. Sept. 2, 1994)); see also Perkins, 1994 U.S. Dist. LEXIS 13709, at *6-*7 (transferring suit to the Middle District of Pennsylvania from the Eastern District of Pennsylvania, where plaintiff resided, because the complaint showed that plaintiff was objecting to state-wide policies and had filed her complaint on behalf of a statewide class (citing Leroy v. Great Western United Corp., 443 U.S. 173 (1979)); Leroy, 443 U.S. at 185-86 (finding that proper venue for action brought by Texas corporation challenging an Idaho corporate takeover statute was in Idaho, because "the claim involved has only one obvious locus -- the District of Idaho.  Most importantly, it is action that was taken in Idaho by Idaho residents -- the enactment of the statute by the legislature, the

review of Great Western's filing, the forwarding of the comment letter by Deputy Administrator Baptie, and the entry of the order postponing the effective date of the tender by Finance Director McEldowney -- as well as the future action that may be taken in the State by its officials to punish or to remedy any violation of its law, that provides the basis for Great Western's federal claim"). We further find that Defendants have met their burden of establishing that the proper venue for this case lies in the Middle District of Pennsylvania, the place where the challenged policies and procedures were developed and will be carried out, not in the Eastern District of Pennsylvania.

Since we have decided that venue is inappropriate in this district, we may either dismiss this action or, if it is "in the interest of justice," transfer it to another district where venue is proper. 28 U.S.C. § 1406(a). "Whether to dismiss or transfer is within the broad discretion of the district court." Soul v. Movado Retail Group, Inc., Civ. A. No. 06-2115, 2007 U.S. Dist. LEXIS 26323, at *4 (M.D. Pa. Apr. 10, 2007) (citing In re United States, 273 F.3d 380, 387 (3d Cir. 2001)). The proper venue for this case is in the Middle District of Pennsylvania. Consequently, we find that it is in the interest of justice to transfer this case to the Middle District of Pennsylvania. See Lawman Armor Corp. v. Simon, 319 F. Supp. 2d 499, 507 (E.D. Pa. 2004) ("As to the interest of justice, 'normally transfer will be in the interest of justice because [] dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.'" (quoting Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467 (1962); Miller v. Hambrick, 905 F.2d 259, 262 (9th Cir. 1990); In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 257 F. Supp.2d 717, 734 (S.D.N.Y. 2003))).

IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Transfer is granted. Defendants' Motion to Dismiss is denied as to Defendants' argument that Plaintiffs Wilson and Hardcastle should

be dismissed for lack of subject matter jurisdiction.  Defendants' Motion to Dismiss is also denied as to Defendants' argument that the Complaint should be dismissed for lack of venue.  Defendants' Motion to Dismiss is granted as to Defendants' argument that Superintendent DiGuglielmo should be dismissed pursuant to Rule 12(b)(6).  Defendants have also moved to dismiss the Complaint pursuant to Rule 12(b)(6) on the ground that Plaintiffs' claims are barred by the statute of limitations. We believe that this portion of Defendants' Motion should be decided by the Court that has venue over this case.  Consequently, this portion of the Motion to Dismiss shall be held in abeyance until this action is transferred to the United States District Court for the Middle District of Pennsylvania.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK ROBERT CHESTER, ET AL.     :        CIVIL ACTION
                                  :
             v.                 :
                                    :
JEFFREY A. BEARD, ET AL.        :        NO. 07-4742

## O R D E R

      **AND NOW,** this 29th day of May, 2008, upon consideration of Defendants' Motions to Dismiss (Docket No. 9) and Transfer (Docket No. 12), all documents filed in connection therewith, and the Argument held on April 23, 2008, **IT IS HEREBY ORDERED** as follows:

1.      The Motion to Dismiss is **DENIED** as to Defendants' argument that Plaintiffs Wilson and Hardcastle should be dismissed for lack of subject matter jurisdiction;

2.      The Motion to Dismiss is **DENIED** as to Defendants' argument that this action should be dismissed for lack of venue;

3.      The Motion to Dismiss is **GRANTED** as to Defendant David DiGuglielmo and he is dismissed as a Defendant in this action;

4.      The Motion to Transfer is **GRANTED** and this action is **TRANSFERRED** to the United States District Court for the Middle District of Pennsylvania;

5.      The Motion to Dismiss is held in **ABEYANCE** as to Defendants' argument that Plaintiffs' claims are barred by the statute of limitations until this action is transferred to the United States District Court for the Middle District of Pennsylvania.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.