IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK ROBERT CHESTER, | : | |
| ZACHARY WILSON, and | : | |
| DONALD HARDCASTLE, | : | Civil No. 1:08-cv-1261 |
| | : | |
| Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| JEFFREY A. BEARD and | : | |
| FRANKLIN J. TENNIS, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

This putative class action is brought by three plaintiffs, Frank Robert Chester, Zachary Wilson, and Donald Hardcastle ("Plaintiffs"), each of whom has been convicted of first-degree murder and sentenced to death in Pennsylvania. Plaintiffs allege that the Commonwealth of Pennsylvania's practice of executing condemned prisoners by means of lethal injection subjects them to an unnecessary risk of excruciating pain and suffering and therefore violates Plaintiffs' rights to be free from cruel and unusual punishment and to due process of law under the Eighth and Fourteenth Amendments to the United States Constitution. Plaintiffs seek preliminary and permanent injunctive relief to enjoin Defendants from executing Plaintiffs by lethal injection as currently authorized and implemented by the Commonwealth.

Now pending before the Court is Defendants' collective motion to dismiss the complaint. In support of their motion, Defendants assert that the Court lacks jurisdiction over this action because Plaintiffs lack standing to sue, and additionally because the complaint was not timely filed. Defendants further argue that the complaint fails to advance any claim cognizable under either the Eighth or Fourteenth Amendments, insisting that a recent plurality decision of the

United States Supreme Court "makes it clear that allegations about a state's lethal injection protocol of the sort found in the complaint here are insufficient to state claims of constitutional harm." (Doc. No. 43, at 4.) Upon consideration, the Court disagrees with Defendants' characterization of this action and the issues presented, and further disagrees that the Supreme Court's decision in Baze v. Rees absolutely forecloses Plaintiff's challenge to Pennsylvania's lethal injection protocol. Accordingly, for the reasons discussed below, the motion will be denied and discovery will proceed.

**I.     STANDARD OF REVIEW**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint, Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993), and is properly granted when, taking all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997).

The Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), has altered the standard of review for a motion to dismiss pursuant to Rule 12(b)(6). Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008). In construing the Rule 12(b)(6) standard generally, the Court required the plaintiff to provide more than a formulaic recitation of

a claim's elements that amounted to mere labels and conclusions. Twombly, 550 U.S. at 555-56. Additionally, the Court held that the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555. The Third Circuit has held that this language in Twombly applies generally to all motions brought under Rule 12(b)(6) and summed up the Twombly standard as follows: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." Phillips, 515 F.3d at 234 (internal quotations and citations omitted). After Twombly, it is still true that "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Id. at 232 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).

## II.   DISCUSSION

### A.   Standing

Defendants contend that each Plaintiff lacks standing to prosecute this action and, therefore, that the Court is without lawful authority under Article III of the United States Constitution to exercise jurisdiction over this matter. In essence, Defendants contend that although each of the Plaintiffs is under a death sentence, whether any of the Plaintiffs will actually be affected by the Commonwealth's lethal-injection protocol is "unknown" and, with respect to two of the plaintiffs, "speculative." (Def. Br. at 8.) Defendants suggest that none of the Plaintiffs has a sufficient personal interest in challenging the constitutionality of

3

Pennsylvania's lethal-injection protocol until they are under an active death warrant, signed by the Governor.

The Court finds that detailed analysis of this argument as it relates to Plaintiffs Wilson and Hardcastle is unnecessary because it was addressed and ruled upon by Judge Padova before this action was transferred to this Court from the Eastern District of Pennsylvania.[1]  "Under the law of the case doctrine, 'when a court decides upon a rule of law, that decision should continue to govern the same issue in subsequent stages of the same case'."  American Civil Liberties Union v. Mukasey, 534 F.3d 181, 187 (3d Cir. 2008) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988) (further citations omitted); see also Hamilton v. Leavy, 322 F.3d 776, 786 (3d Cir. 2003) ("The law of the case doctrine limits relitigation of an issue once it has been decided in an earlier stage of the same litigation.").  Notably, the doctrine applies to subsequent rulings made by different judges in the same case.  Casey v. Planned Parenthood of Souteastern Pennsylvania, 14 F.3d 848, 856 n.11 (3d Cir. 1994).  Although the doctrine operates to limit relitigation of issues once they have been decided, it does not preclude reconsideration of previously decided issues in extraordinary circumstances, such as where (1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier

---

[1]  Plaintiffs commenced this action on November 9, 2007, by filing a complaint in the Eastern District of Pennsylvania.  On January 22, 2008, Defendants filed motions to dismiss the complaint and to transfer the action to this Court.  On June 2, 2008, Judge Padova entered an order granting in part and denying in part Defendants preliminary motion to dismiss the complaint.  In this order, Judge Padova granted Defendants' motion to dismiss David Diguglielmo and denied Defendants' motion to the extent it asserted a lack of subject matter jurisdiction.  Judge Padova ruled that the remainder of Defendants' arguments in support of dismissal would be held in abeyance pending transfer of the action to the Middle District of Pennsylvania.  The action was transferred to this Court on July 2, 2008, and Defendants submitted a new motion to dismiss on October 3, 2008.  The Court heard argument on the motion on April 27, 2009.

decision was clearly erroneous and would create manifest injustice.  <u>In re City of Phila. Litig.</u>, 158 F.3d 711, 718 (3d Cir. 1998).

Defendants have not relied upon any of these "extraordinary circumstances" in urging the Court to revisit Judge Padova's ruling with respect to Messrs. Wilson's and Hardcastle's standing, but instead suggest only that because subject matter jurisdiction is "such an important issue," the Court should reconsider the matter.  (Def. Br. at 6.)  Although recognizing the fundamental requirement of Article III standing and its role in limiting the federal courts' exercise of jurisdiction, the Court does not find that Defendants have presented a sufficient basis for the Court to reconsider an issue that Judge Padova squarely addressed and answered before transferring this action to the Middle District of Pennsylvania.  Accordingly, the Court finds that Judge Padova's ruling with respect to standing shall continue to be applied in this case.

As noted, Judge Padova's earlier ruling addressed only the standing of Messrs. Wilson and Hardcastle, and did not reach the issue of Mr. Chester's standing because Defendants did not previously challenge it.  If anything, Chester's standing is even more apparent than the standing of his fellow plaintiffs because he alone has not yet obtained habeas relief.  Nevertheless, Defendants contend that because Mr. Chester is not presently under an active death warrant signed by Pennsylvania's governor, he should be found to lack sufficient personal interest in this litigation to permit his challenge to Pennsylvania's lethal injection protocol.  In short, Defendants contend that Mr. Chester and his co-plaintiffs lack standing because none faces "imminent execution."  (Def. Br. at 6.)  Though they refer the Court to familiar case law articulating the general rules regarding Article III standing, Defendants cite no authority that specifically supports their assertion that plaintiffs challenging the constitutionality of a death-

penalty protocol must wait until they are under an active death warrant in order to have standing to challenge a state's method of execution. Upon consideration, the Court agrees with Judge Padova that the fact that each of the plaintiffs in this action is subject to a death sentence confers upon them a sufficient personal stake in this litigation to satisfy Article III's standing requirements. Accordingly, Defendants' motion to dismiss this action under Rule 12(b)(1) for lack of subject matter jurisdiction will be denied.

### B.   Statute of Limitations

Defendants next argue that Plaintiffs' claims were not filed timely within the two-year statute of limitations period applicable to actions brought in Pennsylvania under 42 U.S.C. § 1983. Defendants contend that the two-year limitations period began running for each Plaintiff on July 17, 1998, the date that the Commonwealth's lethal-injection law became effective.[2] Alternatively, Defendants note that Plaintiffs attached to their complaint a letter dated November 24, 2004, from Randall N. Sears, then the Deputy Chief Counsel for the Department of Corrections, to the Defender Association of Philadelphia, which included limited information regarding the Commonwealth's execution procedures. Defendants assert that even if the timeliness of the complaint is calculated by reference to this letter, the action was filed out of time because the complaint was not filed until three years after it was apparently mailed. In response, Plaintiffs insist that no statute of limitations can apply in this case because Plaintiffs are seeking purely equitable relief.

The Supreme Court has instructed that § 1983 claims are properly characterized as tort

---

[2] Although this information is not set forth in the complaint, Defendants have averred and Plaintiffs have not contested that each of the named plaintiffs was convicted and sentenced to death prior to the enactment of Pennsylvania's lethal injection law.

actions for the recovery of damages for personal injury, and that federal courts must therefore borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. Wilson v. Garcia, 471 U.S. 261, 275-76 (1985). In Wilson, the Supreme Court stated broadly that federal courts must select "the one most appropriate statute of limitations for all § 1983 claims." Id. at 275 (emphasis added). Pennsylvania subjects personal injury actions to a two-year limitations period. 42 Pa. Cons. Stat. Ann. § 5524; see also Kost v. Kozakiewicz, 1 F.3d 176, 189-90 (3d Cir. 1993) (holding that Pennsylvania's two-year statute of limitations applies to claims for violations of constitutional rights brought pursuant to 42 U.S.C. § 1983).

Plaintiffs insist that Pennsylvania's two-year statute of limitations can have no application in this case because they have sought only equitable – rather than legal – relief. In support of this argument, Plaintiffs rely on a single Supreme Court decision that predates Wilson by 45 years, and on a handful of district court decisions that either did not involve § 1983 or did not address in any meaningful way whether claims for injunctive relief brought under § 1983 were subject to an applicable limitations period.[3] In researching the issues presented, the Court has identified one case outside of the death penalty context in which the Third Circuit seemed to conclude that the statute of limitations would apply even in cases seeking injunctive relief. See Sullivan v. Pittsburgh, 811 F.2d 171, 180 n.10 (3d Cir. 1987) ("Although the district court in the underlying action did not award damages, relief was granted pursuant to 42 U.S.C. § 1983, which authorizes federal courts to afford injunctive as well as retroactive relief. Accordingly,

---

[3] To their credit, it was Plaintiffs who actually identified case law from other circuits holding that the rule announced in Wilson extends to § 1983 claims challenging method-of-execution protocols.

Wilson is applicable to appellant's statute of limitations defense.") (citation omitted).

It appears that, to date, neither the Supreme Court nor the Third Circuit has had occasion to address specifically whether Wilson applies to § 1983 actions challenging a state's method-of-execution protocols.  However, in the past two years, relying on Wilson, the United States Courts of Appeal for the Fifth, Sixth, and Eleventh Circuits have each concluded that statutes of limitation are applicable to purely injunctive § 1983 method-of-execution claims.  See Walker v. Epps, 550 F.3d 407, 415 (5th Cir. 2008), petition for a writ of certiorari filed March 24, 2009 (No. 08-9606); McNair v. Allen, 515 F.3d 1168, 1174 (11th Cir.), cert. denied, Callahan v. Allen, __ U.S. __, 128 S. Ct. 2914, 171 L. Ed. 2d 850 (2008); Cooey v. Strickland, 479 F.3d 412, 416 (6th Cir. 2007).  Although there were dissenting opinions in both McNair and Cooey, it appears that no court of appeals has yet reached the contrary conclusion that § 1983 claims challenging execution protocols are exempt from the applicable limitations period to which other claims brought under § 1983 are subject.  Considering this, together with the fact that the Third Circuit has previously stated that § 1983 claims seeking injunctive relief are subject to statutes of limitation, and the fact that the literal language of Wilson extends to all § 1983 actions, the Court can only conclude that the constitutionality of Pennsylvania's lethal injection protocol is governed by a two-year limitations period.

However, the Court does not find that Defendants have sustained their burden of proving that this case may appropriately be dismissed in a motion to dismiss on the grounds that the limitations period has expired.  Although the statute of limitations constitutes an affirmative defense, the Third Circuit permits the defense to be raised in a dispositive motion to dismiss under Rule 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of

Case 1:08-cv-01261-YK   Document 54   Filed 09/28/2009   Page 9 of 19

action has not been brought within the statute of limitations." Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002). However, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." Id. (quoting Bethel v. Jendoco Constr. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978).

As the party asserting the affirmative defense under federal law, Defendants bear the burden of proving that the statute of limitations bars Plaintiffs from bringing this action. See, e.g., Richard v. Roush, Inc. Profit Sharing Plan v. New England Mut. Life Ins. Co., 311 F.3d 581, 585 (3d Cir. 2002) (defendant moving for summary judgment bears burden of proving statute of limitations defense); Gruber v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990) ("When the statute of limitations is raised as a defense, we have recognized that it 'is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant.'") (quoting Van Buskirk v. Carey Canadian Mines, Ltd., 760 F.2d 481, 487 (3d Cir. 1985)).

In this case, the bar to suit is not immediately apparent on the face of Plaintiffs' complaint and therefore this case may not be dismissed under Rule 12(b)(6). It is undisputed that each of the named Plaintiffs was already on death row when Pennsylvania adopted lethal injection as its method-of-execution protocol in 1998. It is also undisputed that some information about Pennsylvania's lethal injection practices was made, or eventually became, public via a November 2004 letter from Randall N. Sears, then the Commonwealth's Deputy Chief Counsel for the Department of Corrections, to the Defender Association of Philadelphia.[4]

---

[4] It is not apparent to the Court from reviewing the complaint as to when the Plaintiffs may have first seen the letter, or what information conveyed in the letter may have placed Plaintiffs on notice of their claims. Although the letter was attached to the complaint as an

Nevertheless, it is not clear that either the adoption of the lethal-injection protocol in 1998, standing alone, or the information conveyed in a 2004 letter sent to lawyers who are not party to this action, necessarily mark the only possible accrual points for Plaintiffs' claims.[5]  The Court acknowledges that in Cooey, McNair, and Epps, the courts of appeal each found that the statute of limitations period should be found to run from the later of the date the state's execution protocol was adopted or the conclusion of direct review of a plaintiff's conviction and sentence.  Notwithstanding the bright-line rule embraced in these decisions, it is not at all clear that such dates must, in all cases, serve as the accrual point for a § 1983 action challenging an inmate's method of execution.  Neither of these dates would appear, on their own, to signify that any of the Plaintiffs necessarily knew, or should have known, about the basis for this action at those times.  The Third Circuit has instructed lower courts not to dismiss actions on statute of limitations grounds unless the bar is manifest on the face of the complaint, and the Court finds

---

exhibit, it is not clear whether this letter provided the information that led to Plaintiffs' alleged apprehension that their Eighth Amendment rights to be free from cruel and unusual punishment would be violated if they were subjected to Pennsylvania's lethal injection protocol as currently administered.  It is also not clear whether anything in this letter could have, or should have, given Plaintiffs such apprehension sufficient to trigger the statute of limitations to begin running.  Defendants have identified no case law binding upon this Court that the statute of limitations must be deemed to begin running on any particular date in § 1983 actions challenging a state's method of execution.

[5]  Although Pennsylvania law supplies the applicable limitations period, the date on which that period begins is a question of federal law. See Wallace v. Kato, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law").  Accrual occurs "when the plaintiff has a complete and present cause of action . . . that is, when the plaintiff can file suit and obtain relief." Id. (quotations and citations omitted); see also Genty v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (for purposes of a suit under § 1983, statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.").

10

that it is not immediately obvious as to when Plaintiffs in this case recognized – or should have recognized – that they had a cause of action so as to trigger the statute of limitations period. Moreover, Defendants have candidly acknowledged that they carefully guard against public dissemination of information regarding the Commonwealth's death-penalty protocol, and this fact makes it further difficult to determine an accrual date. At this preliminary juncture, the Court is unable to find that the statute of limitations presents an absolute bar to Plaintiffs' claims.[6]

---

[6] The Court notes its concern that application of statutes of limitations to these equitable claims risks imposing potentially very unjust results in § 1983 method of execution actions, while at the same time doing little to further the interests that statutes of limitation are intended to protect. As Plaintiffs persuasively argue, concerns over stale evidence and memories that have faded or grown unreliable due to the passage of time are unfounded in a suit to enjoin a harm that has not yet occurred but which Plaintiffs have reason to believe may occur as a result of being subject to the Commonwealth's execution protocol. The Court does recognize and appreciate that the Commonwealth has a legitimate and significant interest in seeing that its criminal sanctions are enforced and not subject to potentially endless delay, particularly where inmates have had the opportunity to seek direct review of their convictions and have been able to pursue collateral challenges in the state and federal courts. But the fact that an inmate could bring a
§ 1983 suit to challenge a method of execution does not necessarily mean that the Commonwealth would be thwarted from its efforts to carry out that inmate's sentence. Indeed, in holding that inmates may lawfully challenge a state's method-of-execution protocol through a § 1983 suit, the Supreme Court acknowledged this very concern and took care to emphasize that plaintiffs would not automatically be entitled to have their executions stayed:

> Filing an action that can proceed under § 1983 does not entitle the complainant to an order staying an execution as a matter of course. Both the State and the victims of crime have an important interest in the timely enforcement of a sentence. Our conclusions today do not diminish that interest, nor do they deprive federal courts of the means to protect it. We state again, as we did in Nelson, that a stay of execution is an equitable remedy. It is not available as a matter of right, and equity must be sensitive to the State's strong interest in enforcing its criminal judgments without undue interference from the federal courts.

**C.  Baze v. Rees**

The Supreme Court has held that an inmate may properly challenge a state's method of execution by filing a suit for injunctive relief under § 1983.  Hill v. McDonough, 547 U.S. 573, 576 (2006).  Nevertheless, Defendants insist that the Supreme Court's recent plurality decision in Baze v. Rees rendered so significant a change to Eighth Amendment jurisprudence so as to foreclose entirely Plaintiffs' claims as pleaded in the complaint.  In this regard, Defendants declare that the three-Justice opinion in Baze has "supplied definitive guidance as to what type of conduct or conditions must exist to give rise to a claim under the Eighth Amendment that execution by lethal injection constitutes cruel and unusual punishment."  (Def. Reply Br. at 1.)  According to Defendants, Justice Roberts's lead opinion, joined by Justices Kennedy and Alito, "specifically rejected the notion" that a complaint alleging only that a death-penalty protocol caused an "unnecessary risk of pain" fails to state a claim under the Eighth Amendment.  (Id. at 1-2.) Defendants read Baze to reject any claim brought under the Eighth Amendment unless the complaint specifically alleges that the method-of-execution protocol presents an "objectively intolerable risk of harm."  (Id.)  For their part, Plaintiffs maintain that they have satisfied their burden of pleading facts and injury sufficient to state a claim under the Federal Rules of Civil Procedure and consistent with the Supreme Court's recent decision in Twombly that refined pleading standards in federal court.

Upon consideration, although Defendants are no doubt correct that the plurality in Baze said a number of important things regarding capital punishment and the Eighth Amendment, the decision is not as sweeping as Defendants' interpretation suggests – and it does not foreclose

---

Hill v. McDonough, 547 U.S 573, 583-84 (2006) (citation omitted).

Plaintiffs' claims as pleaded in this case.[7]  Indeed, the precedential holding in Baze can by read quite narrowly, with the plurality doing little more than "concluding that Kentucky's procedure is consistent with the Eighth Amendment," 128 S. Ct. 1520, 1538 (2008) (emphasis added); see also Emmett v. Johnson, 532 F.3d 291, 309 (4th Cir. 2008) (Gregory, J., dissenting) (finding the Court's holding in Baze to be "extremely narrow" and noting that the Court's decision was rendered upon a full record of facts regarding the administration of Kentucky's protocol that were developed in the state trial court).  Indeed, the factual-dependency of the Court's decision is evident from Chief Justice Roberts's opinion, where he notes at the outset that the trial court "held extensive hearings and entered detailed Findings of Fact and Conclusions of Law."  Baze, 128 S. Ct. at 1526.  The Kentucky Supreme Court affirmed the lower court's findings of fact and conclusions of law, and the United States Supreme Court affirmed the judgment.  Id.  The Court's scope of review, and deference to the lower court's factual findings, is clear and runs throughout Justice Roberts's opinion.  See, e.g., id. at 1533 (finding the trial court's factual finding regarding the minimal risk of mis-administration of sodium thiopental was not "clearly

---

[7] The Supreme Court has endeavored to have its plurality decisions be regarded as guiding precedent to lower courts.  Thus, in Mark v. United States, the Court held that "when no single rationale explaining the result enjoys the assent of five justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds.'"  430 U.S. 188, 193 (1977) (citation omitted) (rejecting lower court holding that plurality decision does not create precedent).  The Third Circuit has held that courts applying the Marks rule should focus on identifying the "opinion of the Justice or Justices who concurred on the narrowest grounds necessary to secure a majority."  Planned Parenthood of S.E. Pa. v. Casey, 947 F.2d 682, 694 n.7 (3d Cir. 1991).  In practice, seeking to distill the narrowest common grounds of a plurality decision can be challenging, and the Court finds it to be especially so in the case of Baze.  The particular difficulties and constitutional problems that arise in attempting to apply Marks in the context of method-of-execution and capital cases are the subject of a recent law review article that takes Baze as its starting point.  See Justin F. Marceau, *Lifting the Haze of Baze: Lethal Injection, the Eighth Amendment, and Plurality Decisions*, 41 Ariz. St. L.R. 159 (2009).

erroneous," particularly because the finding was substantiated by expert testimony).[8]  The factual grounding of Baze, and its specific review of Kentucky's particular death-penalty program, caution against applying unquestioningly its result to any other case in which an inmate challenges a death-penalty protocol that uses the same three drugs that Kentucky utilizes.[9]  The types of drugs alone used is not dispositive of the issue, and nothing in Chief Justice Roberts's opinion can reasonably be read to suggest otherwise.  Indeed, a substantial focus of the plurality decision is on the factual record supporting the lower court's finding that the administration of the three-drug protocol, in accordance with procedures and safeguards mandated by Kentucky, was constitutional because the petitioners had failed to show that the risk of mis-administration was substantial.  See Baze, 128 S. Ct. at 1533-34 (noting that petitioners had not shown that problems with administering the drugs intravenously presented a sufficiently substantial risk of harm, in part due to the "several important safeguards" that Kentucky implements to ensure an adequate delivery of drugs and to mitigate potential problems, including, inter alia: the "significant" fact that the written protocol requires that members of the intravenous team have at

---

[8] In his persuasive dissenting opinion in Emmett, Judge Gregory of the Fourth Circuit criticized the majority's dismissal of the plaintiff's claims as having been foreclosed by Baze and emphasized that Justice Roberts's opinion was grounded in a factual record developed in the lower courts.  See Emmett, 532 F.3d at 309 ("[W]hether Virginia's protocol is in fact substantially similar to the procedure upheld in Baze is the singular issue at hand.  Although this legal determination is inextricably tied to complex factual issues that have never been addressed by the district court in light of Baze, the majority remarkably concludes that 'Virginia's protocol for lethal injection is substantially similar to that approved by the Supreme Court.'  Because I cannot condone usurping the district Court's unique ability to make factual findings in the first instance, I must dissent.") (original emphasis).  Notably, Emmett was disposed of on a motion for summary judgment, rather than a motion to dismiss.

[9] It is not disputed that Pennsylvania uses the same three-drug protocol that Kentucky uses.  (Def. Br. in Support, at 10 n.9.)

least one year of relevant professional experience as a certified medical assistant, phlebotomist, EMT, paramedic, or military corpsman; the requirement that the entire execution team participate in 10 practice sessions per year, including a complete walk-through and siting of IV catheters into volunteers; and the presence of personnel who watch for signs of IV problems and take corrective measures if problems become evident, about which three expert witnesses testified). The plurality's inquiry makes it quite clear that its decision relied upon the substantial factual findings that were developed in the Kentucky state courts regarding Kentucky's specific death-penalty protocol.[10]

The leading opinion in Baze noted that the Court's precedent recognizes "that subjecting individuals to a risk of future harm – not simply actually inflicting pain – can qualify as cruel and unusual punishment," but in order to prevail on such a claim there must be a "substantial risk of serious harm" or an "objectively intolerable risk of harm." Id. at 1530-31. Nevertheless, the Court does not read these words as talismanic phrases that determine whether or not a plaintiff has adequately pleaded a claim that a state's method-of-execution protocol violates the Constitution. Furthermore, upon review of the complaint, the Court finds that the allegations set forth in the complaint sufficiently place Defendants on notice that Plaintiffs are alleging that the Commonwealth's death-penalty protocol is unconstitutional because, inter alia, the persons charged with administering the drugs and overseeing the process are inadequately trained to do so (Compl. at ¶¶ 25, 26, 28, 34, 38) and, due to this lack of training and the dangers presented by

---

[10] Notably, Chief Justice Roberts's review of these factual findings came after he observed that it was "uncontested that, failing a proper dose of sodium thiopental that would render the prisoner unconscious, there is a substantial, constitutionally unacceptable risk of suffocation from the administration of pancuronium bromide and pain from the injection of potassium chloride." 128 S. Ct. at 1533.

improper administration of the drugs used to ensure death, Plaintiffs face the risk of suffering "the agony of asphyxiation" and "tremendous burning in their veins and painful heart attacks," while being unable to express the pain experienced or convey their suffering because of the paralysis induced by pancuronium bromide (id. at ¶ 28, 29, 31, 33, 36).  Upon consideration, the Court finds that these allegations are sufficient to state a claim under the Eighth and Fourteenth Amendments, notwithstanding the outcome in Baze.

     Defendants make much of the fact that Plaintiffs' complaint contains allegations that the Commonwealth's death-penalty protocol, and the alleged deficiencies in its administration, subject them to an "unnecessary risk" of suffering pain.  Defendants seize on this use of language because in Baze, the plurality found that allegations regarding "unnecessary risk" were insufficient to make out a constitutional claim.  However, in making this argument Defendants ignore the context in which the "unnecessary risk" standard was rejected.  Chief Justice Roberts was rejecting the petitioners' efforts to establish an Eighth Amendment violation merely by proposing a "slightly or marginally safer alternative."  Baze, 128 S. Ct. at 1531.  The plurality found this standard to be untenable in large part because to adopt it would transform federal courts into "boards of inquiry charged with determining 'best practices' for executions, with each ruling supplanted by another round of litigation touting a new and improved methodology." Id.  In the case before this Court, Plaintiffs have neither proposed an alternative procedure nor claimed that their constitutional rights are being violated because the Commonwealth has selected a marginally less safe protocol than other alternatives.  Rather, Plaintiffs' claims are predicated on their allegations that, inter alia, the personnel charged with administering Pennsylvania's death-penalty protocol are insufficiently trained, and that the Commonwealth has

16

put in place inadequate safeguards to ensure that condemned inmates do not suffer extreme pain and suffering during their executions, and that these shortcomings lead to a risk that Plaintiffs will suffer painful and unconstitutional executions. The Court finds that Plaintiffs' allegations are sufficient to state a claim and the Court rejects Defendants' contention that Baze dictates that the complaint be dismissed.[11]

### D. Superintendent Tennis

Lastly, Defendants move to dismiss Defendant Tennis, the Superintendent of SCI-Rockview, on the grounds that Defendant Tennis had no personal involvement in developing the execution protocol being challenged in this action. Plaintiffs respond that, as Superintendent of the prison where executions in the Commonwealth take place, Defendant Tennis is properly named because he will oversee Plaintiffs' executions at SCI-Rockview. Indeed, Plaintiffs alleged as much in their complaint, asserting that Defendant Tennis "will supervise Plaintiffs' executions." (Compl. ¶ 13.) As Plaintiffs challenge the Commonwealth's death-penalty protocol and specifically seek to enjoin the Commonwealth from executing them pursuant to such protocol, the Court finds that Plaintiffs have properly named Defendant Tennis as a party in this suit and Defendant's motion to dismiss him for lack of personal involvement will be denied.

### III. CONCLUSION

For the reasons set forth above, the Court finds that it has subject matter jurisdiction over

---

[11] Defendants have also moved to dismiss Plaintiffs' claims brought under the Fourteenth Amendment on the grounds that "the Fourteenth Amendment affords no greater rights than the Eighth." (Def. Br. in Support, at 13.) In support, Defendants refer the Court to their arguments in favor of dismissing Plaintiffs' Eighth Amendment claim. Having found that Plaintiffs have stated a claim under the Eighth Amendment, and the Court finding no other argument in favor of dismissing the claim brought under the Fourteenth Amendment, this claim will not be dismissed.

this action and that Plaintiffs have stated a claim sufficient to overcome Defendants' motion to dismiss. Accordingly, Defendants' motion will be denied and discovery will be permitted to proceed.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FRANK ROBERT CHESTER, | : | |
| ZACHARY WILSON, and | : | |
| DONALD HARDCASTLE, | : | Civil No. 1:08-cv-1261 |
| | : | |
| Plaintiffs | : | (Chief Judge Kane) |
| | : | |
| v. | : | |
| | : | |
| JEFFREY A. BEARD and | : | |
| FRANKLIN J. TENNIS, | : | |
| | : | |
| Defendants | : | |

## ORDER

**AND NOW**, this 28th day of September 2009, upon due consideration of Defendants' motion to dismiss Plaintiffs' complaint (Doc. No. 42), and for the reasons fully set forth in the attached memorandum, **IT IS HEREBY ORDERED THAT** the motion is **DENIED**.

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania