# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FRANK ROBERT CHESTER, et al.,** | : | Civil No. 1:08-CV-1261 |
| **Plaintiffs** | : | |
| v. | : | (Chief Judge Kane) |
| **JEFFREY BEARD, et al.,** | : | (Magistrate Judge Carlson) |
| **Defendants** | : | |

## MEMORANDUM OPINION

### I.  Statement of Facts and of the Case

This case is a civil rights action brought by the Plaintiffs challenging the constitutionality of Pennsylvania's death penalty protocol. On October 23, and October 26, 2012, discovery disputes in this case were referred to the undersigned for resolution.

The events which precipitated this referral after four year of litigation, and now inspire urgency in this matter, can be simply stated: On September 5, 2012, the Defendants served upon the Plaintiffs a second amended Department of Corrections Lethal Injection Protocol dated August 28, 2012 (the "August 2012 Protocol"), which by its terms "supersedes all prior versions" of the execution protocol to be used by the Commonwealth of Pennsylvania. One week later, on September 11, 2012, a death

1

warrant issued for Hubert Michael, a member of the Plaintiff class in this case, inmates awaiting execution in Pennsylvania. Michael's execution is currently scheduled to take place on November 8, 2012. The confluence of these two events–the recent revision of the death penalty protocol coupled with the scheduled execution of Mr. Michael–created significant time constraints, both for the Court and for all parties to this litigation, in addressing the issues of constitutional dimension raised by the Commonwealth's revised proposed death penalty protocol.

Upon receipt of the September 2012 Protocol, the Plaintiff delayed for several weeks, until October 1, 2012, when the Plaintiffs served a Third Set of Interrogatories and Document Requests on Defendants. These discovery requests included 20 Interrogatories and 22 Requests for Production of Documents, all of which derived from the most recent August 2012 Protocol. These discovery demands were then discussed by the parties during a telephone conference with the District Court on October 11, 2012, at which Defendants' represented that they would serve their Responses to Plaintiffs' Third Set of Interrogatories and Document Requests on October 17, 2012. When the Defendants served their Responses to Plaintiffs' Third Set of Interrogatories and Document Requests on October 17, 2012, the Defendants objected to numerous of these requests largely on the ground that when considered in combination with Defendants' prior discovery requests, they exceeded the

2

permissible total number (25) of Interrogatories and Requests for Production of Documents authorized by the District Court's October 23, 2009 Case Management Order in this litigation.

Presented with this initial response from the Commonwealth, on October 22, 2012, Plaintiffs filed an emergency motion seeking leave to serve additional interrogatories and requests for production of documents. (Doc. 135.) In this motion, the Plaintiffs represented that the newly propounded discovery requests were necessitated by changes that the Commonwealth of Pennsylvania made recently with respect to its death-penalty protocol. Plaintiffs further represented that this matter was particularly urgent, and time was of the essence in discovering the information sought, because the Commonwealth has issued a death warrant scheduling the execution of Hubert Michael, Jr. for November 8, 2012. Finally, Plaintiffs argued that the parties had clearly contemplated the necessity of additional discovery into the death penalty protocol once a revised protocol was issued by the Commonwealth. In this regard, Plaintiffs observed that on August 18, 2011, the District Court entered an Order granting the parties' stipulated motion prepared by Defendants for the opportunity to take additional discovery regarding the new execution protocol once that protocol was promulgated. (Doc. 73.) That August 18, 2011 Order stated that "[a]ny additional discovery regarding the new policy shall be completed within 90

days of Plaintiffs' counsel receiving from Defendants a copy of the new policy, and Plaintiffs' new or supplemental expert report shall be served within 90 days of Plaintiffs' counsel receiving from Defendants a copy of the new policy." (Id.)

Presented with this emergency motion, and confronted by a scheduling conflict that arose immediately following the submission of the motion, the District Court referred the emergency motion to the undersigned for initial and prompt consideration. We convened the parties for a telephone conference at 2:30 p.m. on October 24, 2012, to address Plaintiffs' motion and Defendants' opposition thereto. During this call, after hearing argument from all parties, the Court instructed the parties that Defendants' objections to the proposed discovery would be overruled to the extent they were based solely on limitations set forth in a case management order issued almost exactly three years ago, in light of the undisputed changed circumstances presented in this case with respect to both the Commonwealth's newly developed death-penalty protocol and the impending execution of Mr. Michael. However, we also instructed Plaintiffs that they would be directed immediately to supplement their motion by submitting under seal carefully tailored discovery requests, requests that may have now been narrowed by information that the Commonwealth has already provided. The Court thereafter instructed Defendants to be prepared promptly to offer substantive objections to Plaintiffs' discovery requests,

4

to ensure that the Court was in the position to make an informed judgment with respect to Plaintiffs' discovery request without undue delay, mindful of the compressed nature of this issue in light of the pending execution of Hubert Michael, Jr.

The Plaintiffs responded to this order by filing under seal a more narrowly tailored set of discovery demands directed to the Defendants. These latest discovery requests reduced the total number of these discovery demands from 42 interrogatories and requests for production of documents to 24 interrogatories and requests for production of documents.

Having been reassigned by the District Court to address this particular dispute on Friday, October 26, 2012, we convened a conference call with counsel on Monday, October 29, 2012. During this call we addressed with counsel how they should endeavor to narrow and resolve discovery issues in this time-sensitive litigation while confronting the logistical hurdles presented by an unprecedented weather event, the impact of Hurricane Sandy. The parties have ably responded to these challenges. Thus, with the Plaintiffs' requests narrowed in this fashion, the Commonwealth has reported to the Court that it has provided substantive responses to many of these discovery demands. The parties have, however, jointly identified for the Court one issue that remains unresolved.

That remaining unresolved issue relates to the Plaintiffs' request for information regarding the sources of supply for the pharmacological agents used by the Commonwealth in its lethal injection protocol. With respect to this issue the contrasting views of the parties are ably, and starkly, drawn. The Plaintiffs' contend that confirming the legitimacy and the *bona fides* of the supplier of these elements is a critical component of any substantive analysis of this death penalty protocol, since these supply source(s) in large measure may determine the quality and efficacy of the drugs used in this process.

The Defendants, in turn, argue that this information should not be disclosed because it is cloaked in confidentiality by state statute, 61 Pa. C. S. § 4305 (c), which provides that "The identity of department employees, department contractors or victims who participate in the administration of an execution pursuant to this section shall be confidential." Defendants also support this assertion of privilege with a declaration from the Secretary of the Pennsylvania Department of Corrections, John Wetzel, which notes the applicable provisions of state law, details the confidentiality which the Department attaches to this information, and highlights concerns that potential suppliers may be reluctant to provide these drugs in the future if their identities are broadly disclosed. The Wetzel declaration then candidly acknowledges an immutable fact in this litigation; namely, that the Defendants have previously

shared other sensitive information with Plaintiffs' counsel subject to confidentiality agreements, which have been consistently honored by all parties. Notwithstanding this past compliance with confidentiality requirements, the declaration notes that:

> While I recognize that the circumstances pursuant to which the Court is proposing to order defendants to supply the identifying information involved in this case is designed to keep that information confidential, and I have no reason to doubt that those bound by the Court's order would strive to honor the obligations it would impose, given the large number of individuals to whom the information would be provided, there is, in my judgment, a significant possibility of accidental or inadvertent disclosure of the information which would impair the DOC's ability to obtain the drugs it requires in order to meet its obligations under state law. It is my belief that if the identities of the supplier are revealed in this litigation, the supplier will become so concerned over the potential for exposure of their identities that they will no longer agree to provide the necessary drugs in the future.

(Doc. 153.)

The parties completed their submissions to the Court regarding this issue on October 31, 2012. Therefore this matter is now ripe for resolution. For the reasons set forth below, we will order disclosure of this information, subject to a confidentiality order.

## II.     Discussion

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines both the scope and limitations governing the use of discovery in a federal civil action:

> (1) Scope in General. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any

> nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)( C ).

The instant dispute calls upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil Procedure to regulate discovery in this case. Issues relating to the scope of discovery permitted under the Rules rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J.1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D.Pa.2004) (citing Scott Paper Co. v. United States, 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible

> only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J.1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion is guided, however, by certain basic principles. Thus, at the outset, it is clear that Rule 26's broad definition of that which can be obtained through discovery reaches only "nonprivileged matter that is relevant to any party's claim or defense". Therefore, valid claims of privilege still cabin and restrict the Court's discretion in ruling on discovery issues. Furthermore, the scope of discovery permitted by Rule 26 embraces all "relevant information" a concept which is defined in the following terms: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. Morrison v. Philadelphia Housing Auth., 203 F.R.D. 195, 196 (E.D.Pa. 2001). Once that initial burden is met, "the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that

the requested discovery (1) does not come within the broad scope of relevance as defined under Fed.R.Civ.P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." In re Urethane Antitrust Litigation, 261 F.R.D. 570, 573 (D.Kan. 2009).

Judged against these benchmarks, we find that disclosure of the identity of the supplier(s) of the pharmacological agents used in this process is relevant to this litigation where it is incumbent upon the Plaintiffs to show that this particular death penalty protocol, "violates the Eighth Amendment, [because], the [protocol] must be '*sure or very likely* to cause serious illness and needless suffering,' and give rise to ' sufficiently *imminent* dangers.' Helling v. McKinney, 509 U.S. 25, 33, 34–35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993) (emphasis added). [Thus] to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' Farmer v. Brennan, 511 U.S. 825, 842, 846, and n. 9, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Baze v. Rees, 553 U.S. 35, 49-50 (2008). Thus, understanding and evaluating the drugs used in a lethal injection protocol is an integral part of this constitutional analysis, and identifying where the drugs came from seems reasonably calculated to inform our understanding

of this important issue, an issue that lies at the heart of the Eighth Amendment analysis the District Court is called upon to perform here.

Given the relevance of this information to the issues presented in this litigation, we must then assess whether the confidentiality concerns raised by the Defendants outweigh the relevance of this information, and justify wholesale withholding of this information. In considering this issue, which rests in large part upon state law confidentiality provisions, it is also well-settled that:

> Because, . . . , discovery disputes in federal courts are governed by federal law, especially the Federal Rules of Civil Procedure and the Federal Rules of Evidence, the state statutory confidentiality provisions that have been invoked by [the parties] . . . do not directly govern the present dispute.

Pearson v. Miller, 211 F.3d 57, 61 (3d Cir. 2000).

Thus, the Commonwealth's citation to the Pennsylvania statute which provides that "[t]he identity of department employees, department contractors or victims who participate in the administration of an execution pursuant to this section shall be confidential", 61 Pa. C. S. § 4305 (c), constitutes only the beginning, and not the end, of our legal analysis. While we are instructed to consider the persuasive force of state laws that impose confidentiality on certain classes of information, those laws do not control in assessing privilege claims in federal court. Moreover, in conducting this

assessment we are mindful of the fact that the appropriateness of deference to a state's law of privilege is diminished when the litigation involves a constitutional challenge to some proposed state action. Indeed, in this setting, where the constitutionality of some state action is at issue, it has been aptly observed that: "[T]here is a 'special danger' in permitting state governments to define the scope of their own privilege". Pearson, 211 F.3d at 68.

Instead, we believe that the Commonwealth's objections to this disclosure must be weighed using the standards defined by the federal courts for the governmental privilege relating to state law enforcement records. Those standards acknowledge a governmental privilege but enjoin courts to balance the confidentiality of governmental records against the rights of a civil rights litigant by considering:

> (1) the extent to which disclosure will thwart governmental processes . . . ; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiffs suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiffs case.

Frankenhauser v. Rizzo, 59 F.R.D. 339, 344 (E.D. Pa. 1973).

In this case, a number of these considerations weigh heavily in favor of disclosure of this information, subject to appropriate confidentiality safeguards. At the outset, we find that the information sought is relevant to non-frivolous legal claims that are brought in good faith. We further conclude that this information is not available through other discovery from other sources, and the information is important to the adjudication of the issues raised in this case.

We further find that none of this information, which simply identifies pharmacological vendors, intrudes upon deliberative or self-evaluative governmental precesses in a way which would compel non-disclosure. Nor would disclosure of this information inappropriately encroach upon on-going criminal cases or investigations, since those cases have long ago reached finality with the imposition of the sentence whose implementation is the subject of this litigation.

Given all of these factors which weigh in favor of disclosure of this information, the Defendants rely largely upon a concern that this disclosure will have an adverse impact upon these third party vendors, and may therefore thwart government efforts to secure these products in the future to avoid this disclosure. These concerns, while substantial and sincere, do not in our view call for the wholesale denial of this information which may be relevant to a fully-informed

consideration of the constitutionality of Pennsylvania's death penalty protocol. These concerns do, however, strongly caution against public dissemination of this information, and suggest that the information should be shared with counsel for the Plaintiffs subject to a strict confidentiality order prohibiting further disclosure of this information without the express approval of the Court.

In this regard, we note that confidentiality agreements are not new to this litigation. Quite the contrary, we are informed by counsel that sensitive identifying information has been disclosed to Plaintiffs' counsel in the past subject to confidentiality agreements. Like Corrections Secretary Wetzel, we "have no reason to doubt that those bound by the Court's order would strive to honor the obligations it would impose." (Doc. 153.) Indeed, the parties have honored such confidentiality agreements throughout the course of this litigation, and we are fully equipped to take steps to ensure that the parties continue to meet these obligations in the future.

### III. Conclusion

Accordingly, for the foregoing reasons, it is ORDERED that the Plaintiff's emergency motion for discovery is GRANTED in part in that the Defendants are directed to identify the sources of the pharmacological agents identified by the Commonwealth in its death penalty protocol to the Plaintiffs' counsel, subject to a the following conditions:

It is hereby further ORDERED that any documents disclosing this information shall be marked "CONFIDENTIAL," shall be used solely for the purpose of preparation and trial of this litigation and for no other purpose whatsoever, and shall not be disclosed to any person with the exception of the following individuals:

(1) the counsel of record in this action; and

(2) Judges, Magistrate Judges, law clerks and other personnel of the Court;

without prior approval of the Court. Individuals authorized to review confidential information pursuant to this Protective Order shall hold such confidential information in confidence and shall not divulge the confidential information, either orally or in writing, to any other person, entity or government agency, other than those listed above, unless authorized to do so by Court Order. See Jon Feingersh Photography, Inc. v. Pearson Educ., Inc., 281 F.R.D. 234, 238 (E.D. Pa. 2012)

So ordered, this 1st day of November 2012.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge