**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK ROBERT CHESTER, et al.,** | : | **Civil No. 1:08-CV-1261** |
| | : | |
| **Plaintiffs** | : | |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **JEFFREY BEARD, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

**MEMORANDUM ORDER**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

This case is a civil rights action brought by the Plaintiffs challenging the constitutionality of Pennsylvania's death penalty protocol. On October 23, and October 26, 2012, discovery disputes in this case were referred to the undersigned for resolution. The events which precipitated this referral after four year of litigation, and now inspire urgency in this matter, can be simply stated: On September 5, 2012, the Defendants served upon the Plaintiffs a second amended Department of Corrections Lethal Injection Protocol dated August 28, 2012 (the "August 2012 Protocol"), which by its terms "supersedes all prior versions" of the execution protocol to be used by the Commonwealth of Pennsylvania. One week later, on September 11, 2012, a death warrant issued for Hubert Michael, a member of the

1

Plaintiff class in this case, inmates awaiting execution in Pennsylvania. Michael's execution is currently scheduled to take place on November 8, 2012. The confluence of these two events–the recent revision of the death penalty protocol coupled with the scheduled execution of Mr. Michael–created significant time constraints, both for the Court and for all parties to this litigation, in addressing the issues of constitutional dimension raised by the Commonwealth's revised proposed death penalty protocol.

Upon receipt of the September 2012 Protocol, the Plaintiff delayed for several weeks, until October 1, 2012, when the Plaintiffs served a Third Set of Interrogatories and Document Requests on Defendants. These discovery requests included 20 Interrogatories and 22 Requests for Production of Documents, all of which derived from the most recent August 2012 Protocol. These discovery demands were then discussed by the parties during a telephone conference with the District Court on October 11, 2012, at which Defendants' represented that they would serve their Responses to Plaintiffs' Third Set of Interrogatories and Document Requests on October 17, 2012. When the Defendants served their Responses to Plaintiffs' Third Set of Interrogatories and Document Requests on October 17, 2012, the Defendants objected to numerous of these requests largely on the ground that when considered in combination with Defendants' prior discovery requests, they exceeded the permissible total number (25) of Interrogatories and Requests for Production of

Documents authorized by the District Court's October 23, 2009 Case Management Order in this litigation.

Presented with this initial response from the Commonwealth, on October 22, 2012, Plaintiffs filed an emergency motion seeking leave to serve additional interrogatories and requests for production of documents. (Doc. 135.) In this motion, the Plaintiffs represented that the newly propounded discovery requests were necessitated by changes that the Commonwealth of Pennsylvania made recently with respect to its death-penalty protocol. Plaintiffs further represented that this matter was particularly urgent, and time was of the essence in discovering the information sought, because the Commonwealth has issued a death warrant scheduling the execution of Hubert Michael, Jr. for November 8, 2012. Finally, Plaintiffs argued that the parties had clearly contemplated the necessity of additional discovery into the death penalty protocol once a revised protocol was issued by the Commonwealth. In this regard, Plaintiffs observed that on August 18, 2011, the District Court entered an Order granting the parties' stipulated motion prepared by Defendants for the opportunity to take additional discovery regarding the new execution protocol once that protocol was promulgated. (Doc. 73.) That August 18, 2011 Order stated that "[a]ny additional discovery regarding the new policy shall be completed within 90 days of plaintiffs' counsel receiving from defendants a copy of the new policy, and

plaintiffs' new or supplemental expert report shall be served within 90 days of plaintiffs' counsel receiving from defendants a copy of the new policy." (Id.)

Presented with this emergency motion, and confronted by a scheduling conflict that arose immediately following the submission of the motion, the District Court referred the emergency motion to the undersigned for initial and prompt consideration.  We convened the parties for a telephone conference at 2:30 p.m. on October 24, 2012, to address Plaintiffs' motion and Defendants' opposition thereto. During this call, after hearing argument from all parties, the Court instructed the parties that Defendants' objections to the proposed discovery would be overruled to the extent they were based solely on limitations set forth in a case management order issued almost exactly three years ago, in light of the undisputed changed circumstances presented in this case with respect to both the Commonwealth's newly developed death-penalty protocol and the impending execution of Mr. Michael. However, we also instructed Plaintiffs that they would be directed immediately to supplement their motion by submitting under seal carefully tailored discovery requests, requests that may have now been narrowed by information that the Commonwealth has already provided.  The Court thereafter instructed Defendants to be prepared promptly to offer substantive objections to Plaintiffs' discovery requests, to ensure that the Court was in the position to make an informed judgment with

respect to Plaintiffs' discovery request without undue delay, mindful of the compressed nature of this issue in light of the pending execution of Hubert Michael, Jr.

The Plaintiffs responded to this order by filing under seal a more narrowly tailored set of discovery demands directed to the Defendants. These latest discovery requests reduced the total number of these discovery demands from 42 interrogatories and requests for production of documents to 24 interrogatories and requests for production of documents.

Having been reassigned by the District Court to address this particular dispute on Friday, October 26, 2012, we convened a conference call with counsel on Monday, October 29, 2012. During this call we addressed with counsel how they should endeavor to narrow and resolve discovery issues in this time-sensitive litigation while confronting the logistical hurdles presented by an unprecedented weather event, the impact of Hurricane Sandy. The parties have ably responded to these challenges. Thus, with the Plaintiffs' requests narrowed in this fashion, the Commonwealth has reported to the Court that it has provided substantive responses to many of these discovery demands. The parties, however, jointly identified for the Court one issue that remains unresolved.

That remaining unresolved issue related to the Plaintiffs' request for information regarding the sources of supply for the pharmacological agents used by the Commonwealth in its lethal injection protocol.  With respect to this issue the contrasting views of the parties are ably, and starkly, drawn.  The Plaintiffs' contended that confirming the legitimacy and the *bona fides* of the supplier of these elements is a critical component of any substantive analysis of this death penalty protocol, since these supply source(s) in large measure may determine the quality and efficacy of the drugs used in this process.

The Defendants, in turn, argued that this information should not be disclosed because it is cloaked in confidentiality by state statute, 61 Pa. C. S.  § 4305 (c), which provides that "The identity of department employees, department contractors or victims who participate in the administration of an execution pursuant to this section shall be confidential."  Defendants also support this assertion of privilege with a declaration from the Secretary of the Pennsylvania Department of Corrections, John Wetzel, which noted the applicable provisions of state law, details the confidentiality which the Department attaches to this information, and highlights concerns that potential suppliers may be reluctant to provide these drugs in the future if their identities are broadly disclosed.  The Wetzel declaration then candidly acknowledged an immutable fact in this litigation; namely, that the Defendants have previously

6

shared other sensitive information with Plaintiffs' counsel subject to confidentiality

agreements, which have been consistently honored by all parties.  Notwithstanding

this past compliance with confidentiality requirements, the declaration noted that:

> While I recognize that the circumstances pursuant to which the Court is proposing to order defendants to supply the identifying information involved in this case is designed to keep that information confidential, and I have no reason to doubt that those bound by the Court's order would strive to honor the obligations it would impose, given the large number of individuals to whom the information would be provided, there is, in my judgment, a significant possibility of accidental or inadvertent disclosure of the information which would impair the DOC's ability to obtain the drugs it requires in order to meet its obligations under state law. It is my belief that if the identities of the supplier are revealed in this litigation, the supplier will become so concerned over the potential for exposure of their identities that they will no longer agree to provide the necessary drugs in the future.

(Doc. 153.)

The parties completed their submissions to the Court regarding this issue on

October 31, 2012.  On November 1, 2012, we ordered that the Plaintiff's emergency

motion for discovery was granted in part in that the Defendants are directed to

identify the sources of the pharmacological agents identified by the Commonwealth

in its death penalty protocol to the Plaintiffs' counsel, subject to a the following

conditions:

It was further ordered that any documents disclosing this information shall be

marked "CONFIDENTIAL," shall be used solely for the purpose of preparation and

trial of this litigation and for no other purpose whatsoever, and shall not be disclosed to any person with the exception of the following individuals:

(1) the counsel of record in this action; and

(2) Judges, Magistrate Judges, law clerks and other personnel of the Court; without prior approval of the Court.  Individuals authorized to review confidential information pursuant to this Protective Order shall hold such confidential information in confidence and shall not divulge the confidential information, either orally or in writing, to any other person, entity or government agency, other than those listed above, unless authorized to do so by Court Order.  See Jon Feingersh Photography, Inc. v. Pearson Educ., Inc., 281 F.R.D. 234, 238 (E.D. Pa. 2012).

The Defendants appealed this ruling to the District Court, (Docs. 162 and 165.), which affirmed the decision of this Court stating:

> Upon reviewing Magistrate Judge Carlson's memorandum opinion, the Court is satisfied that he did not abuse his discretion in ordering the disclosure of the above-mentioned discovery. As Magistrate Judge Carlson noted, discovery disputes in federal courts are governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, rather than state laws. Pearson v. Miller, 211 F.3d 57, 61 (3d Cir. 2000).

> **ACCORDINGLY**, on this 1st day of November 2012, **IT IS HEREBY ORDERED THAT** Magistrate Judge Carlson's November 1, 2012 order (Doc. No. 156) is **AFFIRMED**.

> **IT IS FURTHER ORDERED THAT**, Defendants are directed to identify to Plaintiffs' counsel the sources of the pharmacological agents

8

identified by the Commonwealth in its lethal injection protocol in accordance with Magistrate Judge Carlson's order.

Despite the entry of two orders directing the Defendants to comply with this discovery, subject to a strict confidentiality order, at approximately 3:30 p.m. on November 1, 2012, the undersigned participated in a conference call in which it was reported that the Defendants had declined to disclose this information. In order to avoid any confusion and further delay in this litigation, we deem it appropriate to reiterate the guidance we endeavored to provide to all parties during this conference call. All parties are expected to comply with the orders of the Court unless those orders have been stayed or vacated by a superior tribunal. In this case the discovery order of this Court has not been stayed or vacated. Rather, it has been expressly affirmed by the District Court. Moreover, since pre-trial discovery orders of this type typically may not be appealed to the United States Court of Appeals, as either a final order or an appealable interlocutory order, see State of N.Y. v. U.S. Metals Ref. Co., 771 F.2d 796, 801 (3d Cir. 1985), there seems it be no grounds for continuing non-compliance with this order pending further appellate review. Further, given the scheduled hearing in this matter before the District Court on November 5, and the scheduled execution of Mr. Michael on November 8, there is a manifest necessity for compliance with the Court's discovery order so the District Court hearing may proceed as scheduled on a fully developed factual record. Therefore, to the extent

9

that any party wishes to seek a stay of this particular discovery order pending further litigation, this Court would not be inclined to stay enforcement of its order unless all aspects of this litigation, including the impending execution of Mr. Michael, were stayed by joint consent of this parties.

In light of this guidance, IT IS ORDERED that the parties shall report to the Court on the status of compliance with its order, or any joint request for stay, by **November 2, 2012, at 2:00 p.m.**.

So ordered, this 2d day of November 2012.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge