**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FRANK ROBERT CHESTER, <u>et</u> <u>al.</u>,** | : | |
| **Plaintiffs** | : | |
| | : | **No. 1:08-cv-1261** |
| **v.** | : | |
| | : | **(Judge Kane)** |
| **JOHN E. WETZEL, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>**

Before the Court is a motion to intervene by Guardian News & Media LLC, The

Philadelphia Inquirer, the Pittsburgh Post-Gazette, and the Philadelphia City Paper

("Intervenors"), for the sole purpose of unsealing documents concerning the pharmacological

agents used by the Pennsylvania Department of Corrections ("DOC") in its execution protocol.

(Doc. No. 251.)  For the reasons that follow, the Court will grant the motion to intervene, and

will order the Clerk of Court to file the Intervenors' motion to unseal.

**I.      BACKGROUND**

The original complaint in the above-captioned class action was filed on November 9,

2007.  (Doc. No. 1.)  The Plaintiff class consists of all persons who are presently under a

sentence of death in Pennsylvania or who at some point during the pendency of this action will

be under a sentence of death by lethal injection in Pennsylvania.  The complaint alleges that

Pennsylvania's lethal injection protocol poses an unnecessary risk that Plaintiffs will suffer pain

in violation of the proscription against cruel and unusual punishment and the guarantees of due

process of law under the Eighth and Fourteenth Amendments of the United States Constitution.

(<u>Id.</u> ¶ 40.)  The Court will not rehash the long, complex history of these proceedings, but notes

that on October 23, 2012, class Plaintiff Hubert Michael filed a motion for a stay of execution,

temporary restraining order, or preliminary injunction (Doc. No. 139), which the Court denied on November 6, 2012 (Doc. No. 186).

In the meantime, during October 2012, a discovery dispute arose over the Plaintiffs' request for information regarding the sources of supply for the pharmacological agents utilized by the DOC in carrying out executions, and Plaintiffs filed an emergency motion for discovery. (Doc. No. 135.)  The Court referred the motion to Magistrate Judge Martin C. Carlson for disposition, and although Magistrate Judge Carlson granted the motion to the extent he directed the Defendants to identify the sources of the pharmacological agents to the Plaintiffs, he also ordered that all sensitive identifying information be marked as confidential.  (Doc. No. 156.)  In his order, Magistrate Judge Carlson specifically noted state statute 61 Pa. C.S. § 4305©, which provides that "[t]he identity of department employees, department contractors or victims who participate in the administration of an execution pursuant to this section shall be confidential" and highlighted concerns that potential suppliers may be reluctant to provide these drugs in the future if their identities are broadly disclosed.  (Id. at 11-14.)  That same day, this Court affirmed Magistrate Judge Carlson's order.  (Doc. No. 166.)  On November 15, 2012, the Court ordered that all "[f]uture filings containing biographical information about anyone involved in executions in Pennsylvania" and "any filings referencing information that is protected by law" should be filed under seal or otherwise redacted.  (Doc. No. 194.)

Following discovery, Defendants filed a motion for summary judgment on May 24, 2013. (Doc. No. 205.)  Before the Court ruled on the motion, Plaintiffs filed a motion to supplement and develop the record on summary judgment on November 18, 2013.  (Doc. No. 226-2.)  In that motion, the Plaintiffs asked the Court to re-open discovery for the limited purpose of

supplementing the record with information regarding a subsequent FDA investigation of the entity responsible for testing the drugs at issue. (Id.) The parties also jointly agreed to file these briefs under seal, consistent with the Court's order of November 15, 2012. (See Doc. No. 225.)

On September 11, 2014, following the supplemental discovery, and with the Defendants' motion for summary judgment again ripe for disposition, the Intervenors filed their motion to intervene.[1] (Doc. No. 251.) Specifically, they seek to intervene in this action so that they might seek an order of court unsealing documents that they believe contain identifying information regarding the sources of the drugs utilized by the DOC. (Id.) According to the Intervenors, they cannot obtain the information from the DOC, because the information has been deemed unavailable under the Pennsylvania Right to Know Law. (Id.) They also state that they seek information regarding the sources of the pharmacological agents "in order to investigate the quality of the provenance of these drugs and to make the information available to the public as part of an ongoing public debate about the use of lethal injection to carry out the death penalty." (Id.) They ask the Court to permit them to intervene pursuant to Federal Rule of Civil Procedure 24(b)(1)(B), and to direct the Clerk of Court to file their motion to unseal, that they appended to their motion to intervene. (See Doc. No. 261 at 5.)

## II.   DISCUSSION

---

[1] Initially, the Intervenors classified their motion as an emergency motion because Pennsylvania had scheduled the execution of class Plaintiff Hubert Michael for September 22, 2014, which would have been the first execution in Pennsylvania since 1999. (Doc. No. 251-8 at 4.) Intervenors sought to unseal the documents prior to the scheduled execution. However, on September 12, 2014, Governor Thomas Corbett signed a temporary reprieve (Doc. No. 260-1) and, to the Court's knowledge, there is currently no scheduled date of execution for Mr. Michael. Following a telephone conference with the Court that same day, a standard briefing schedule was issued concerning the present motion to intervene.

In support of their motion, the Intevenors assert that they have standing to intervene, and that permissive intervention is the appropriate method to challenge the sealing orders issued in this case.  They also insist that their motion is timely, and that because the matter of confidentiality is ancillary to the primary subject matter of the case, intervention will not delay or prejudice the litigation.  They further contend that their interests are not currently represented by any party to the litigation.

Rule 24(b) of the Federal Rules of Civil Procedure allows for anyone who has "a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law or fact." to permissively intervene "[o]n timely motion." Fed. R. Civ. P. 24(b)(1)(A)-(B).  Determining whether a motion for permissive intervention should be granted is within the discretion of the district court.  See PA Prison Soc'y v. Cortes, 622 F.3d 215, 232 (3d Cir. 2010); Hoots v. Pennsylvania, 672 F.2d 1133, 1135 (3d Cir. 1982). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

The Court initially finds that the Intervenors have standing and meet the 'commonality' requirement of Rule 24(b).  In the Third Circuit, "the procedural device of permissive intervention is appropriately used to enable a litigant who was not an original party to an action to challenge protective or confidentiality orders entered in that action."  Pansy v. Borough of Stroudsburg, 23 F.3d 772, 778 (1994).  In Pansy, newspapers sought to intervene in order to gain access to a settlement agreement that was sealed by an order of confidentiality.  The Third Circuit held that "[b]y virtue of the fact that the Newspapers challenge the validity of the Order of Confidentiality entered in the main action, they meet the requirement of [Federal Rule of Civil

4

Procedure] 24(b)(2) that their claim must have 'a question of law or fact in common' with the main action." Id.  In the same way, the Court finds that the Intervenors in this matter meet the commonality requirement.

Thus, the question for the Court is whether the Intevenors' motion is timely, or whether intervention will cause undue delay or prejudice.  First, the Court finds the motion is timely, despite Defendants' arguments to the contrary.  As Defendants point out (Doc. No. 260 at 6), the identity of the drug manufacturer was treated as confidential in November 2012.  In justifying seeking to intervene to unseal now, the Intervenors contend that there was no reason to report on Pennsylvania's execution procedures until there was a strong possibility that an execution would occur; Mr. Michael's execution warrant was signed on July 24, 2014.  (Doc. No. 252 at 6.)  The Intervenors also state that the question of the origin of execution drugs has become of far greater interest to the public in recent months.  (Id.)  Defendants argue, however, that Intervenors waited another 7 weeks after the signing of the execution warrant – until a mere 11 days before the scheduled date of execution – to file their motion to intervene, and intended to litigate the merits of their motion in that brief time, thereby "adversely affect[ing] the Defendants as it meant a reduction in the time Defendants would ordinarily have to respond."  (Doc. No. 260 at 7.)  However, as the parties are aware, the Governor stayed the execution and the Court ordered a standard briefing schedule on the motion to intervene.  Under the circumstances, the Court finds that Defendants were not prejudiced by the 7 week delay.[2]

---

[2]  In concluding that the Intervenors motion is timely under the circumstances, the Court also observes that the Third Circuit in Pansy pointed to a "growing consensus among the courts of appeals that intervention to challenge confidentiality orders may take place long after a case has been terminated." Pansy, 23 F.3d at 779.

Defendants also argue that intervention will "unnecessarily protract the case." (Doc. No. 260 at 6.) However, at this point in the litigation the parties are waiting for disposition of Defendants' summary judgment motion. To the extent consideration of the Intervenors' motion may delay the Court's ruling on the motion for summary judgment, the Court finds such delay will be minimal and is not grounds for denying permissive intervention regarding the distinct issue of the confidentiality order. As the Third Circuit noted in Pansy, "where an intervenor is litigating an ancillary issue, the potential for prejudice to the original parties due to the delay in intervention is minimized." Pansy, 23 F.3d at 779. Accordingly, the Court finds the motion is timely.[3]

The Court similarly finds Defendants' other arguments without merit. Defendants contend that because the Department of Corrections is still in the process of obtaining the drugs for any upcoming executions, there are no documents in this case that reveal the source of the drugs that will be used to carry out the execution of Mr. Michael. Although that may be true, the

---

[3] Defendants point out that the Court has already denied two motions to intervene in this action; specifically, a motion to intervene filed by Plaintiff Class Members Mr. Michael and Terrance Williams, and a motion to intervene by the District Attorney of Philadelphia. (Doc. Nos. 184, 195.) The Court is satisfied that the present motion is distinguishable. For example, in denying the October 15, 2012 motion to intervene by Michael and Williams, the Court noted, in part, that Mr. Michael was scheduled to be executed about three weeks after the date they sought intervention and, accordingly, "to require Defendants to address the newly raised and legally complex claims literally at the eleventh hour would unfairly distract them from their ability to litigate the underlying Eighth Amendment claims . . . ." (Doc. No. 184 at 3.) The District Attorney of Philadelphia's motion to intervene was also filed in October, 2012. (Doc. No. 111.) Here, as noted above, there is no execution currently scheduled for Mr. Michael. Moreover, because the Defendants motion for summary judgment is briefed and waited for disposition, permissive intervention for the sole purpose of challenging the confidentiality order can not fairly be said to distract Defendants from litigating the underlying claims at this time. The Court also found in both prior denials that the would-be Intervenors did not share a common question of fact or law with the main action. (Doc. Nos. 184 at 4, 195 at 4.) As discussed above, the commonality requirement is met here. See Pansy, 23 F.3d at 778.

Court finds it does not justify denying intervention for the purposes of attempting to unseal the

orders related to the 2012 drug supply, to the extent that the Intervenors seek access to such

information.  Defendants also argue that the confidentiality related to the drug and execution

process stems from a state law, and that to litigate whether the documents should be unsealed

will "prejudice those individuals or entities that have been entitled to the protections of the state

statute."  (Doc. No. 260 at 6.)  The Court agrees with the Intervenors that this argument is

premature.  Whether the privacy considerations set forth by the statute take precedence over the

concerns of the Intervenors goes to the merits of the Intervenors' ultimate motion to unseal, not

the merits of their motion to intervene.  As the Third Circuit stated in Pansy, "[t]o establish

standing [for purposes of intervention], it is not necessary for litigants to demonstrate that they

will prevail on the merits of their claim . . . .  Therefore, in determining whether the newspapers

have standing, we need not determine that the Newspapers will ultimately obtain access to the

sought-after [confidential] settlement agreement."  Pansy, 23 F.3d at 777.

Lastly, in response to the Intervenors' assertion that no party to the litigation represents

its interests,  Defendants argue that "it cannot seriously be suggested that the provenance and

quality of the drugs to be used in an upcoming execution are issues not already being litigated in

this case."  (Doc. No. 260 at 7.)  Although it is true that the Intervenors – like Plaintiffs – are

concerned with the quality and safety of the drugs utilized by the DOC, the Court is satisfied that

the Intervenors interests are distinct.  That is, they seek to intervene in order to challenge the

confidentiality orders in this case.  The Plaintiffs, by contrast, are not challenging the sealing of

certain documents and have repeatedly agreed to filing relevant documents under seal in

accordance with the Court's prior orders.

Under <u>Pansy</u>, it is clear that the Intervenors have standing and meet the commonality requirement for permissive intervention.  Because the Court also finds that the matter is timely and that intervention will not unduly prejudice the parties, the Court will grant the motion to intervene pursuant to Federal Rule of Civil Procedure 24(b).  An order consistent with this memorandum follows.